## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

**v.**                         **Case No. 6:24-cr-212-CEM-LHP**

**JESSICA CORIN MANGANO,**

    **Defendant.**

_____ /

## DEFENDANT'S SENTENCING MEMORANDUM AND REQUEST
## FOR DOWNWARD VARIANCE

Defendant Jessica Corin Mangano, through the undersigned attorney, hereby submits this Sentencing Memorandum and Request for Downward Variance prior to her sentencing on August 5, 2025, at 9:30 a.m.

1. Procedural History

   a. On August 28, 2024, a grand jury returned an Indictment against Ms. Mangano charging the following counts: 1) distribution of child pornography (18 U.S.C.§ 2252A(a)(2) and (b)(1)); 2) distribution of child pornography (18 U.S.C.§ 2252A(a)(2) and (b)(1)); 3) receipt of child pornography (18 U.S.C.§ 2252A(a)(2) and (b)(1)); 4) receipt of child pornography

pg. 2

(18 U.S.C.§ 2252A(a)(2) and (b)(1)); and possession of child pornography (18 U.S.C. § 2252(A)(5)(b) and (b)(1)). Doc. 1.

b. Ms. Mangano was arrested on August 29, 2024, and appeared before Magistrate Judge Kidd for her initial appearance. Doc. 7. On the same date, Magistrate Judge Kidd ordered Ms. Mangano detained without prejudice to her right to seek a detention hearing at a future date. Doc. 7. Two detention hearings were held, each time Ms. Mangano remained detained. Doc. 36 and Doc. 49.

c. After a change of private counsel, Ms. Mangano entered into a plea agreement with the Government. Doc. 57.

d. Pursuant to the plea agreement, Ms. Mangano appeared before this Court on February 27, 2025, and entered guilty pleas to counts 1 (distribution of child pornography); 2 (receipt of child pornography); and 5 (possession of child pornography). Doc. 58.

e. On April 28, 2025, private counsel filed a motion to withdraw. Doc. 62. That motion was granted. Doc. 65.

f. The Office of the Federal Defender was appointed on April 30, 2025. Doc. 67.

pg. 3

g.  On July 29, 2025, the final Pre-Sentence Report ("PSR") was filed.  Doc. 77.

h.  The advisory guidelines in the PSR are 151-188 months in the Bureau of Prisons with five years to lifetime supervised release to follow.  PSR at ⁋ 93.

i.  After considering Ms. Mangano's complex history of trauma and mental illness, Probation recommended a downward variance to a sentence of 135 months on each count, concurrent to be followed by ten years of supervised release.  Doc. 77 at 42.

2.  **Ms. Mangano's Extensive, Complex History of Trauma and Mental Illness Justifies a Downward Variance**

Ms. Mangano's story is one of a lifelong struggle with significant mental illness, unbearable loss, family abandonment, compounded by physical, emotional, and sexual abuse by those entrusted to care for her. Mental illness and trauma have left her a shell of the person she was destined to become.   Her sense of self worth became negligible and to feel like she mattered to someone – anyone, even a stranger on the internet – she traveled down a very dark road involving the material for which she is now facing sentencing.

pg. 4

As a child, Ms. Mangano always felt like she didn't fit in because "a piece of her was missing" PSR ⁋ 65. Her parents divorced when she was young, and her father was not part of her childhood. When Ms. Mangano was eleven, her mother married a man who abused and victimized the entire family. Ms. Mangano sought refuge from the abuse in substances, specifically marijuana. Rather than acknowledge that the abusive step-father was causing Ms. Mangano to deteriorate, her mother blamed her own child and put her out of the house at **fourteen years old** not once but twice:

> At age 11, the defendant's mother married Aquilino Jimenez. Manganofelt like she was neglected because her mother had two other children, and the defendant had to help taking care of them. The defendant's stepfather became physically and verbally abusive towards the defendant, her mother, and her siblings. Aquilino Jimenez would physically hit the defendant's sister before she learned to walk. He would also pull her hair and abuse her in many other ways. The defendant attempted to defend her sister and Aquilino Jimenez would physically hit her. He would punch her and leave black eyes and bruises. The defendant's mother never accused him with law enforcement. At age 14, the defendant was put out of the family home and she moved with her maternal grandmother. The defendant returned to her home later, but she began smoking marijuana and was kicked out again. Mangano moved in and out of the family home throughout the years. PSR ⁋ 66.

Those who prey on the weak could see Ms. Mangano's vulnerability. When she was thirteen, she was sexually assaulted at a party. As she

grew into her later teens, she started communicating with men on the internet and would sometimes meet them for sex – when she was still a minor. PSR ⁋ 68. She was sexually assaulted at seventeen and twenty-seven. None of these crimes were ever reported, therefore, none of the men were held accountable for their conduct.

In 2016, the family experienced an unimaginable loss – the death of Ms. Mangano's younger sister who fell from a rooftop in New York City. PSR ⁋ 63. Ms. Mangano and her family firmly believe that Natalia's death was not an accident. Ms. Mangano is visibly haunted by the death of her sister. When discussing Natalia, she becomes so overwhelmed with emotion that she cannot speak. She completely shuts down any time her sister's death is discussed. While she wasn't present when her sister died, any older sibling will feel responsible for the death of a younger sibling whether such thoughts are rational or not. This weight is especially heavy for Ms. Mangano.

Ms. Mangano's mental illnesses became significantly more serious after her sister's death, involving suicide attempts and involuntary psychiatric hospitalizations. Her mental health history is detailed in the report of Dr. Jeffrey Danziger which is attached to the PSR. ("Danziger

pg. 6

Report"). Records from New York Presbyterian Hospital reflect multiple suicide attempts, emergency department visits and psychiatric hospitalizations in the year following her sister's death. Danziger Report at 2. In 2016, she was prescribed multiple psychiatric medications. *Id*. In May of 2017, she attempted to take her own life again. *Id*. The following month, she was involuntarily admitted for psychiatric treatment after an intentional overdose. *Id*. After moving to Florida in 2023, she was not involuntarily hospitalized, but continued to battle bipolar disorder, depression, anxiety, lack of self-worth, panic attacks and suicidal ideation. Danziger Report at 5-6.

After conducting a thorough evaluation and testing, Dr. Danziger concluded:

> Ms. Mangano has a long history of psychiatric illness, and has been diagnosed as having an illness within the bipolar spectrum. She described episodes of both mania and depression, and there is a history of psychiatric hospitalizations and suicide attempts, as described in the body of this report. When I met with her at the jail, she presented with significant depressive symptoms, although she was free of manic symptoms, psychotic symptoms, or suicidal intent or plans, while expressing feelings of hopelessness, worthlessness, anxiety, and anhedonia. She was receiving treatment with mood stabilizing and antidepressant medications, described by the jail psychiatrist.

> Ms. Mangano also reported history of adverse childhood
> appearances (ACE's), saying she was the victim of repeated
> physical abuse by her stepfather, she witnessed other violent
> behavior within the home, she was put out of the home at the
> age of 14, she had very early exposure to substances, and she
> was the victim of sexual assault when she was only 13 years
> old, with another episode of sexual victimization at the age of
> 17. As noted above, adverse experiences during childhood and
> adolescence represent risk factors for the development of
> significant problems in adult life. . . .
>
> Ms. Mangano is a mentally ill individual, with a history of
> being abused physically and sexually throughout her life, who
> described a tendency to be submissive in her relationships.
> Given her mental illness and life history, it is not surprising
> that she could enter into an unusual relationship that
> descended into illegal conduct, due to her mental weakness.

Danziger Report at 11-12.

3. Argument

A downward variance of twenty-four to thirty-six months with a
recommendation that Ms. Mangano participate in the Resolve Trauma
Treatment Program ("RTTP") meets the goals of 18 U.S.C. § 3553(a). It is
"sufficient but not greater than necessary" to accomplish the goals set
forth in 18 U.S.C. § 3553(a)(2).

First, a prison sentence of approximately seven- or eight-years accounts
for the seriousness of the offense.  18 U.S.C. § 3553(a)(1).  Ms. Mangano's
history of trauma and mental illness –while not an excuse for her actions –

pg. 8

provide an explanation due to what Dr. Danziger called her "mental weakness." There is no doubt that her offenses were serious. However, considering her unique vulnerability, the proposed sentence both promotes respect for the law and provides just punishment. 18 U.S.C. § 3553(a)(2)(A).

Second, the proposed sentence meets the rest of the requirements of 18 U.S.C. § 3553(a)(2). Ms. Mangano immediately showed extreme shame and remorse upon her arrest. She has been participating in many programs offered at the Orange County Jail, including therapy. App. D1-D11, E1. Ms. Magano's allocution shows her extreme shame and remorse. App. B. She is willing to participate in any available treatment programs in prison, specifically RTTP.

Ms. Mangano is committed to taking responsibility for her actions, accepting treatment in prison and starting a new life after her release. The many letters from family and friends show that, at heart, she is a well-loved, big-hearted person who strives to make life better for those around her. App. C1-C19. She has improved her relationship with her mother, and they are committed to facing Ms. Mangano's journey of recovery together. Many other people submitted letters of support. The tragedy of this case is that, while mental illness left Ms. Mangano feeling worthless, alone, and

pg. 9

vulnerable, she had a village the whole time.  That village will be there for her every step of the way as she serves her sentence and re-enters society to become the person she was meant to be.

> A. Fitzgerald Hall, Esq.
> Federal Defender, MDFL
>
> /s/ Katherine Puzone
> Katherine Puzone, Esq.
> Assistant Federal Defender
> Florida Bar No. 94491
> 201 South Orange Avenue
> Suite 300
> Orlando, FL 32801
> Telephone: 407-648-6338
> Fax: 407-648-6095
> E-Mail: katherine_puzone@fd.org

## CERTIFICATE OF SERVICE

I Hereby Certify that undersigned electronically filed the foregoing *Sentencing Memorandum* with the Clerk of Court (CM/ECF) by using the CM/ECF system which will send a notice of electronic filing to the following: Chauncey Bratt, Assistant United States Attorney, this the 31st day of July, 2025.

> /s/ Katherine Puzone
> Katherine Puzone, Esq.
> Assistant Federal Defender